# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHELLE PIEKOSZ-MURPHY and N.M., ) ) ) Plaintiffs, ) ) v. ) ) ) BOARD OF EDUCATION OF COMMUNITY ) HIGH SCHOOL DISTRICT NO. 230, AMOS ) ALONZO STAGG HIGH SCHOOL, JAMES ) GAY, ERIC OLSEN, and ROBERT ) FABRIZIO, ) ) Defendants. ) | No. 11 C 3652 Judge Joan H. Lefkow |

## OPINION AND ORDER

N.M., by and through his mother, Michelle Piekosz-Murphy, filed a three count complaint alleging that his high school, the school district, and school administrators violated his rights under the United States Constitution and the Illinois Constitution by disciplining him for attending a party where alcohol was being consumed by minors. Count I requests a preliminary injunction that would enjoin defendants from disciplining N.M. Count II is a request for a writ of common law *certiorari* for review of defendants' decision. Count III asserts a claim under 42 U.S.C. § 1983. Defendants have filed a motion for judgment on the pleadings on all counts, pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion [#11] will be granted as to the federal claims and the case will be remanded to the Illinois courts for determination of the state law claims.[1]

---

[1] This case was removed from the Circuit Court of Cook County pursuant to 28 U.S.C. § 1441(a). This court has original subject matter jurisdiction over plaintiff's section 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §

(continued...)

## BACKGROUND[2]

N.M. is a 17-year old student at Amos Alonzo Stagg High School ("Stagg High School") in Palos Hills, Illinois.[3] N.M. participates in interscholastic athletics and was a member of the National Honor Society. One of the criteria for membership in the National Honor Society is that students may not commit a violation of Stagg High School's Co-Curricular Code of Conduct (the "Code of Conduct") that results in a loss of privileges. (Compl. Ex. E.)

The Code of Conduct is set forth in the Parent/Student Handbook for Consolidated High School District No. 230.[4] The Code of Conduct provides, "Participation in co-curricular activities is a privilege, not a right. As such, there are expectations in regard to conduct that are required for ongoing participation." (Compl. Ex. D at 45.) The Code of Conduct prohibits students from using or possessing alcohol, tobacco, or drugs and provides that "[m]embers must conduct themselves <u>at all times</u>, including after school and on days school is not in session, as

---

[1](...continued)
1367. Venue is proper under 28 U.S.C. § 1391(b) because the events that gave rise to plaintiff's claims occurred in this district.

[2] Unless otherwise noted, the following facts are taken from the verified complaint and attached exhibits and are presumed to be true for the purpose of resolving the pending motion. After briefing on defendants' motion for judgment on the pleadings was complete, plaintiff filed a verified amended complaint. The only new allegation in the verified amended complaint that has been included in the fact section, for the sake of completeness, is that N.M. was expelled from the National Honor Society. The verified amended complaint also alleges that defendants changed their interpretation of the Code of Conduct after this case was filed. This allegation is not supported by the cited school policy statement, which merely states that if a student self-reports that he was at a party with alcohol then no disciplinary action will be taken. (*See* Amend. Compl. Ex. F.) Moreover, as the court explained previously, any change in policy effected after the discipline imposed on N.M. does not affect the court's analysis of defendants' motion. *See* Dkt. #23.

[3] Defendant Eric Olsen is the principal of Stagg High School and defendant Robert Fabrizio is the athletic director.

[4] Stagg High School is part of Consolidated High School District No. 230. Defendant James Gray is the district's superintendent.

good citizens and exemplars of their school and of District 230." (*Id.* at 45–46 (emphasis in original).) The Code of Conduct further states that students "shall not . . . [a]ttend a party or other gathering and/or ride in a vehicle where alcoholic beverages and/or controlled substances are discovered, used, possessed, bought, sold, bartered, distributed, and/or are being consumed by minors." (*Id.* at 46.) A student who participates in an extra-curricular activity and violates the Code of Conduct will be subject to disciplinary action. (*Id.*)

Attending a party where alcohol is being consumed by minors is a "Category A" violation. The Code of Conduct provides that the school will discipline a student's first offense for a Category A violation as follows: (1) "parent notification," (2) "suspension from participation in 1/10 of the total number of performances, activities or competitions," (3) "[t]he student will be referred to the Student Assistance Coordinator," and (4) "[t]he student will be required to practice with the group." (*Id.* at 47.) The Code of Conduct has a voluntary admission policy, which provides that a student will not be subject to any loss of competition or performance time if he or she voluntarily admits to a violation of the Code of Conduct on a first offense. (*Id.* at 49.) A student may not take advantage of the voluntary admission policy if the school already knows about his or her violation of the Code of Conduct. (*Id.*)

In December 2010, N.M. attended a party where alcohol was being consumed by minors. Stagg High School later investigated the party and determined that N.M. had attended the party. Stagg High School's dean first questioned N.M. about the party on March 11, 2011. N.M. admitted that he had gone to the party but stated he had left immediately after he found out that alcohol was present. N.M. submitted a short hand-written statement the next day, which states, "I drove to [K.]'s and I was there and I did not have one sip of alcohol. I had to leave early

3

because I had a wrestling match the next day." (Compl. Ex. A.) N.M. then attended a disciplinary conference with school officials and his parents. N.M. confirmed that he had attended the party but left as soon as he learned that there was alcohol. Shortly thereafter, N.M. was asked to provide a supplemental statement. His supplemental statement, submitted on March 29, 2011, provides

> I drove to [K.]'s and I was upstairs most of the time eating and conversing with a small group of people. Then [K.] came upstairs and asked me to take a picture with her and [W.]. As I was going downstairs I saw that there was alcohol and I thought to myself that I should be leaving and plus I had wrestling in the morning. So, then I took the picture, said my goodbyes to people then left after that.

(*Id.*) School officials met with N.M.'s parents several times thereafter. The school determined that N.M. had not self-reported the violation of the Code of Conduct and that he would be disciplined consistently with the guidelines for a Category A offense. On April 15, 2011, Stagg High School sent a letter to N.M.'s father, informing him that N.M. had admitted that he had attended a party where alcoholic beverages were being consumed by minors and that this behavior violated the school's Code of Conduct. (Compl. Ex. C.) The letter notified N.M.'s father that N.M. would be disciplined according to the school's policy for Category A violations of the Code of Conduct. (*Id.*) Because of the discipline, N.M. was expelled from the National Honor Society. (Amend. Compl. ¶ 20.)

## ANALYSIS

I. **Section 1983 Claim (Count III)**

A. **Legal Standard**

Defendants' motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard of review as a motion to dismiss under Rule

4

12(b)(6). *N. Ind. Gun & Outdoor Shows, Inc.* v. *City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A grant of judgment on the pleadings is appropriate where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Forseth* v. *Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (quoting *Thomason* v. *Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). In considering a Rule 12(c) motion, the court must accept all well-pleaded allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Id.* at 371.

B. **The Alleged Constitutional Violation**

N.M. alleges that defendants' disciplinary action violated his rights under the due process clause of the Fourteenth Amendment, which provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. 14 § 1. Courts have acknowledged that there are two strands of analysis relating to the due process clause. Procedural due process "allows the government to deprive a citizen of 'life, liberty, or property' only in accordance with certain procedural protections." *Doe* v. *City of Lafayette, Ind.*, 377 F.3d 757, 767–68 (7th Cir. 2004); *Lyon* v. *Dep't of Children & Family Servs.*, 807 N.E.2d 423, 431, 209 Ill. 2d 264, 282 Ill. Dec. 799 (2004). Substantive due process considers whether an individual has been subjected to the arbitrary exercise of government power, irrespective of the procedures that were followed. *City of Lafayette*, 377 F.3d at 768.

1. **Procedural Due Process**

Whether N.M. intends to assert a claim that defendants violated his right to procedural due process is not clear. In response to the motion, N.M. "re-affirm[s] . . . that there is no claim that defendants violated [his] rights to procedural due process." (Pl.'s Resp. at 5.) N.M. then

5

argues strenuously that he has a liberty or property interest in being allowed to maintain his membership in the National Honor Society. Whether a plaintiff has a protected property right or liberty interest, however, is usually considered as part of a procedural due process analysis. *See, e.g.*, *Butler* v. *Oak Creek-Franklin Sch. Dist.*, 116 F. Supp. 2d 1038, 1045–49 (E.D. Wis. 2000); *Kulovitz* v. *Ill. High Sch. Ass'n*, 462 F. Supp. 875, 877–78 (N.D. Ill. 1978) (Flaum, J.). In addition, the cases plaintiff cited consider procedural due process claims. *See Paul* v. *Davis*, 424 U.S. 693, 702–12, 96 S. Ct. 1155, 47 L. Ed. 405 (1976); *Goss* v. *Lopez*, 419 U.S. 565, 573–76, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Butler*, 116 F. Supp. 2d at 877; *Lyon*, 807 N.E.2d at 431–32. Therefore, for the sake of completeness, the court will consider whether N.M. has successfully alleged that his right to procedural due process was violated.

Whether N.M. is entitled to procedural due process will depend in the first instance on whether he has a protected liberty or property interest in being allowed to maintain his membership in the National Honor Society. *See Bd. of Curators of Univ. of Missouri* v. *Horowitz*, 435 U.S. 78, 82, 98 S. Ct. 948, 55 L. Ed. 124 (1978). Protected interests "are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as statutes or rules entitling the citizen to certain benefits." *Goss*, 419 U.S. at 573 (quoting *Bd. of Regents* v. *Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). The court may look to Stagg High School's Code of Conduct and other relevant regulations to determine whether N.M. had a "legitimate claim of entitlement" or merely a "unilateral expectation" of being able to maintain his membership in the National Honor Society. *See Butler*, 116 F. Supp. 2d at 1047–48 (quoting *Roth*, 408 U.S. at 577). Stagg High School's Code of Conduct clearly states that participation in co-curricular activities is a

6

"privilege, not a right" contingent on a student's adherence to the Code of Conduct. District No. 230's written criteria for membership in the National Honor Society similarly states that membership is only offered to students who do not violate the Code of Conduct. The written criteria also states that "[m]embership in the National Honor Society is not automatic. It is an honor bestowed by teachers upon those students who exhibit the ideals of the society, which are scholarship, leadership, character, and service." (Compl. Ex.) These school rules and policies, which are the only independent sources cited by N.M., strongly suggest that N.M. does not have a legitimate claim of entitlement to membership in the National Honor Society. *Compare with Butler*, 116 F.2d at 1048–49 (rules and regulations promulgated by high school, school district, the Wisconsin Interscholastic Athletic Association and the Wisconsin Attorney General recognized that when a school offers the opportunity to participate in high school athletics, it creates an entitlement that students will be allowed to participate in athletics so long as they adhere to the terms of the athletic code and other rules and regulations). This conclusion would be consistent with cases holding that students do not have a protected liberty or property interest in participating in sports or other extracurricular activities. *See A.C.* v. *Bd. of Educ. for Cambridge Cmty. Unit Sch. Dist. #277*, No. 05-4092, 2005 WL 3560658, at *2 (C.D. Ill. Dec. 28, 2005) (collecting cases); *Smith* v. *Chippewa Falls Area Unified Sch. Dist.*, 302 F. Supp. 2d 953, 957 (W.D. Wis. 2002) (collecting cases); *Jordan ex rel. Edwards* v. *O'Fallon Twp. High Sch. Dist. No. 203 Bd. of Educ.*, 706 N.E.2d 137, 140, 302 Ill. App. 3d 1070, 235 Ill. Dec. 877 (1999); *Clements* v. *Bd. of Educ. of Decatur Pub. Sch. Dist. No. 61*, 478 N.E.2d 1209, 1210, 133 Ill. App. 3d 531, 88 Ill. Dec. 601 (1985); *see also Todd* v. *Rush Cnty. Schs.*, 133 F.3d 984, 986 (7th Cir. 1998) (noting that playing high school football is a privilege, not a right); *Schaill* v.

*Tippecanoe Cnty. Sch. Corp.*, 864 F.2d 1309, 1323 (7th Cir. 1988) (suggesting that students do not have a protected liberty interest in participating in sports but then concluding that even if plaintiff did have a protected interest, the appropriate procedures were available).[5]

Even if N.M. did have a protected liberty or property interest, he has not argued, much less demonstrated, that defendants' procedures failed to meet the requirements of due process. In *Schaill*, the Seventh Circuit explained that, before being suspended from high school athletics, a student is entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 864 F.2d at 1323 (quoting *Goss*, 419 U.S. at 581); *see also Smith*, 302 F. Supp. 2d at 958. The procedures required by the Fourteenth Amendment are "'rudimentary,' amounting only to 'an informal give-and-take between student and disciplinarian.'" *Schaill*, 864 F.2d at 1323 (quoting *Goss*, 419 U.S. at 584). N.M. was put on notice of the charges against him and was given the opportunity to submit two written statements and meet with school officials in person and with his parents. N.M. did not deny that he had been at a party where alcohol was being consumed by minors, which violates the Code of Conduct, or that he had failed to self-report the violation of the Code of Conduct. Given that any liberty or property interest at issue was slight, defendants' disciplinary procedures provided adequate due process. *See Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (courts should consider the

---

[5] N.M. argues that he also had a protected liberty interest in maintaining his reputation. Liberty interests are implicated only "when injury to reputation is combined with 'governmental action [that] deprived the individual of a right previously held under state law.'" *Brookhart* v. *Ill. State Bd. of Educ.*, 697 F.2d 179, 185 (7th Cir. 1983) (quoting *Paul* v. *Davis*, 424 U.S. 693, 701–02, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). N.M. does not argue that his right to participate in extracurricular activities such as the National Honor Society was conferred by state law. *Compare with Brookhart*, 697 F.2d at 185 (students had state law requirement to receive a high school diploma). Therefore N.M.'s reputational interest is not a protected liberty.

private interest that will be affected by the official action in determining the adequacy of pre-deprivation process). For all of these reasons, N.M. has not demonstrated that he has a viable claim for violation of his right to procedural due process.

## 2. Substantive Due Process

N.M. also asserts that Stagg High School's discipline denied him substantive due process. The Seventh Circuit has explained, in other school discipline cases, that "[t]he touchstone of due process . . . is protection of the individual against arbitrary action of government." *Remer* v. *Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002) (quoting *Dunn* v. *Fairfield Cmty. High School Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) (internal quotations omitted)). "[O]nly the most egregious official conduct is arbitrary in the constitutional sense." *Id.* (quoting *Dunn*, 158 F.3d at 965). The abuse of power must be so arbitrary that it "shocks the conscience," and the plaintiff must show that it is "unjustifiable by any governmental interest." *Id.* (quoting *Dunn*, 158 F.3d at 965).[6]

N.M. does not dispute that Stagg High School has a legitimate interest in preventing student athletes and leaders from being involved with alcohol, drugs, and tobacco. N.M. also

---

[6] N.M. disputes that the "shocks the conscience" standard applies in school disciplinary cases, citing *Seal* v. *Morgan*, 229 F.3d 567 (6th Cir. 2000). There, Sixth Circuit concluded that school discipline violates a student's right to substantive due process where "there is no rational relationship between the punishment and the offense." *Id.* at 575 (quoting *Rosa R.* v. *Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)). The court understands the Sixth Circuit to articulate the same standard used in this circuit, namely that the conduct must be "arbitrary in the constitutional sense." *See Remer*, 286 F.3d at 1013. The Seventh Circuit has cautioned that the constitutional standard for substantive due process cannot be equated with the terms "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Dunn*, 158 F.3d at 966. A more lenient standard, analogous to review under the APA, would "fly[] in the face of the Supreme Court's clear instruction that substantive due process on either the legislative or the executive side requires an extraordinary departure from established norms." *Id.*

9

agrees that student athletes and leaders must abide by the Code of Conduct at all times. The corollary is that Stagg High School has a legitimate interest in disciplining student athletes or leaders who attend parties where alcohol, drugs, or tobacco are being consumed by minors.

N.M. nevertheless argues that the school's disciplinary policy is arbitrary in the constitutional sense because it does not require *scienter*. He notes that the Code of Conduct simply provides that students shall not "[a]ttend a party" where alcohol or other forbidden substances are being consumed, and thus there is no requirement that the student have knowledge that there was alcohol or drugs at the party. In support of his argument, he cites cases holding that "zero-tolerance" policies for the possession of weapons or drugs can violate an individual's right to substantive due process where the individual did not know that he possessed the contraband in question. *See Seal* v. *Morgan*, 229 F.3d 567, 576–80 (6th Cir. 2000) (decision to expel student for weapons possession, when student did not knowingly possess the knife in question, was not rationally related to any legitimate state interest); *Garrido* v. *Cook Cnty. Sheriff's Merit Bd.*, 811 N.E.2d 312, 322, 349 Ill. App. 3d 68, 285 Ill. Dec. 71 (2004) (application of drug-free workplace policy was not rationally related to the purpose of the policy where plaintiff ingested *Mate de Coca* tea without knowledge that it contained trace amounts of cocaine).

Here, however, N.M. admitted that he knew that alcohol was being consumed at the party. N.M. had the option of self-reporting the party to school officials because it was a first-time offense. He was given adequate notice and multiple opportunities to contest the charges. Under these circumstances, the school's discipline of N.M. does not "shock the conscience."

Moreover, the Supreme Court has emphasized that "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood* v. *Strickland*, 420 U.S. 308, 326, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975). "[Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." *Id.*; *see also Tun* v. *Whitticker*, 398 F.3d 899, 904 (7th Cir. 2005) ("[I]t seems that the professionals in this sad train of events . . . exercised questionable judgment. . . . But we can't say that what the defendants did . . . violated the due process clauses of the United States Constitution."). Thus, the court will defer to the school's classification of alcohol-related offenses, even if the classification may be fairly characterized as an abuse of discretion. *See Sabol* v. *Walter Payton College Prep. High Sch.*, 804 F. Supp. 2d 747, 754 (N.D. Ill. 2011). For all of these reasons, N.M.'s substantive due process claim cannot succeed. Therefore defendants' motion for judgment on the pleadings on count III will be granted.

## II. Request for Preliminary Injunction (Count I)

Defendants also move for judgment in their favor on Count I, which is a request for a preliminary injunction that would enjoin defendants from disciplining N.M. The court accepts as common ground between the parties that N.M.'s request for a preliminary injunction is based on the same alleged due process violation that forms the basis of his section 1983 claim. N.M.'s complaint includes allegations that could be construed as support for an equal protection claim, *see* Compl. ¶ 19 ("Defendants' enforcement of the Code is selective, arbitrary and capricious because there are other similar and/or more serious incidents where students have gone unpunished."), however he does not pursue this argument in response to defendants' motion.

To be entitled to preliminary injunctive relief, N.M. must make a threshold demonstration that he (1) has some likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm if preliminary relief is denied. *See, e.g.*, *Roland Mach. Co.* v. *Dresser Indus., Inc.*, 749 F.2d 380, 386–87 (7th Cir. 1984). The necessary requirements for a preliminary injunction are conjunctive. That is, if N.M. cannot satisfy any one of these threshold showings, the court's inquiry ends, and a preliminary injunction will not be issued. The court may deny N.M.'s request for a preliminary injunction without a hearing if it concludes as a matter of law that N.M.'s allegations, even if proven, are insufficient to support the issuance of a preliminary injunction. *See Schlosser* v. *Commonwealth Edison Co.*, 250 F.2d 478, 480–81 (7th Cir. 1958); 11A Charles A. Wright et al., Federal Practice & Procedure § 2949; 13 James Wm. Moore et al., Moore's Federal Practice – Civil § 65.21.

For the reasons discussed above, N.M. has not shown that there is some likelihood of success on the merits of his due process claim. Therefore N.M.'s request for a preliminary injunction must be denied.

### III. Request for Writ of Common Law *Certiorari*

Count II requests that the court issue a writ of *certiorari* for the purpose of reviewing the school's disciplinary decision. Under Illinois law, "[w]here the Administrative Review Law has not been expressly adopted, the writ of common law *certiorari* survives as an available method of reviewing the actions of agencies and tribunals exercising administrative functions." *Bodenstab* v. *Cnty. of Cook*, 569 F.3d 651, 661 (7th Cir. 2009) (quoting *Stratton* v. *Wenona Cmty. Unit Dist. No. 1.*, 551 N.E.2d 640, 645, 133 Ill. 2d 413, 141 Ill. Dec. 453 (1990)). The function of the writ is to bring the entire record of the inferior tribunal before the court for

inspection and review. *Stratton*, 551 N.E.2d at 645; *Murphy* v. *Cuesta, Rey & Co.*, 45 N.E.2d 26, 28, 381 Ill. 162 (1942). The inferior tribunal's decision will be overturned only if the court concludes that it was arbitrary and unreasonable. *Bodenstab*, 569 F.3d at 662 (citing *Maddox* v. *Williamson Cnty. Bd. of Comm'rs*, 475 N.E.2d 1349, 1354, 131 Ill. App. 3d 816, 86 Ill. Dec. 782 (1985)). Whether to issue a writ of *certiorari* is within the sound discretion of the court, and a writ should not issue in the absence of substantial injury or injustice to the petitioner. *Stratton*, 551 N.E.2d at 646. The writ is the only means of reviewing a school disciplinary proceeding on state law grounds. *Brown* v. *Plainfield Cmty. Consol. Sch. Dist. 202*, No. 07 C 3873, 2008 WL 4889021, at *5 (N.D. Ill. Aug. 8, 2008).

Defendants argue that the court should enter judgment in their favor as to Count II because N.M. has not suffered a substantial injury or injustice. Their argument is based on the allegations in N.M.'s verified complaint and supporting documents and assumes that the same legal standard applies to N.M.'s section 1983 claims and to Count II. However a section 1983 action, unlike the common law doctrine allowing for the writ, is not a review proceeding. *Stratton*, 551 N.E.2d at 646. Illinois courts have made clear that "[w]here a plaintiff brings into issue the alleged violation of his procedural and substantive rights, the petition [for a writ] is not subject to dismissal, as such issue cannot be determined as a matter of law upon the bare allegations in the complaint." *Tanner* v. *Ct. of Claims*, 629 N.E.2d 696, 698, 256 Ill. App. 3d 1089, 196 Ill. Dec. 151 (1994); *accord Lake* v. *State*, 928 N.E.2d 1251, 1257, 401 Ill. App. 3d 350, 340 Ill. Dec. 654 (2010). This is because "[t]he purpose of the writ is to have the entire record of the inferior tribunal brought before the court to determine, *from the record alone*, that the inferior tribunal proceeded according to the applicable law." *Am. Fed'n of State, Cnty. &*

*Mun. Employees, Council 31, AFL-CIO* v. *Dep't of Cent. Mgmt. Servs.*, 681 N.E.2d 998, 1004, 288 Ill. App. 3d 701, 224 Ill. Dec. 377 (1997) (emphasis added). Where, as here, there is considerable overlap between a plaintiff's federal due process claim and the issues to be determined during the review by *certiorari*, the court may consider testimony that is extrinsic to the inferior tribunal's record. *See Stratton*, 551 N.E.2d at 646–47. At a minimum, however, the record must be before the court. Defendants have cited no analogous case where a request for a common law writ of *certiorari* was denied based on the defendants' request for judgment on the pleadings. Because the court cannot ascertain whether the entire disciplinary record has been submitted with N.M.'s complaint, defendants' motion for judgment on the pleadings as to Count II must be denied.

This means, however, that the only remaining count from N.M.'s complaint is a state law claim. A district court may decline to exercise supplemental jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This case was removed solely on the basis of federal question jurisdiction, *see* 28 U.S.C. § 1331, and the usual practice is to dismiss or remand supplemental claims to state court if the jurisdictionally sufficient federal claims are dismissed before trial. *See Perkins* v. *Lawson*, 312 F.3d 872, 876 (7th Cir. 2002); *Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Robles* v. *City of Fort Wayne*, 113 F.3d 732, 738 (7th Cir. 1997); *Thiel* v. *Nelson*, 422 F. Supp. 2d 1024, 1033 (W.D. Wis. 2006); Moore's Federal Practice – Civil § 3739. Remand "generally will be preferable" because it "may best promote the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 353, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Here, the there is no reason to require N.M. to refile his state claim for writ of

common law *certiorari*. *Cf. Carnegie-Mellon*, 484 U.S. at 357 (district court can consider whether plaintiff has attempted to manipulate the forum when deciding whether to remand a case). Accordingly, Count II will be remanded.

**CONCLUSION AND ORDER**

Defendants' motion for judgment on the pleadings [#11] is granted on Counts I and III. The Clerk is directed to enter judgment on those counts in favor of the defendants. Count II is remanded to the Circuit Court of Cook County. The case is terminated.

Dated: March 12, 2012                      Enter:_____
                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge